IN RE JUDICIAL DITCH PROCEEDINGS NOW PENDING IN
BLUE EARTH COUNTY, AND KNOWN AS JUDICIAL
DITCH No. 7.  IN RE JUDICIAL DITCH No. 7.
CATHERINE OWENS, APPELLANT.[1]

April 4, 1919.

No. 21,210.

**Judicial ditch — assessment of benefits by jury.**

1. An order amending the viewers' report after a public drainage
system is established, does not change the rule of evidence upon a trial
before a jury to assess benefits.

**Same — assessment of benefits — demand for jury.**

2. An order establishing a public drainage system and confirming the
report of the viewers in no way changes the rule of evidence bearing
upon the issue raised by a demand for a jury to assess benefits.

**Same — trial de novo.**

3. A demand for a jury to assess benefits in a public drainage pro-
ceeding, is a demand for a review by a jury of the decision of the court,
and entitles the landowner to a trial de novo upon that question.

**Same — evidence admissible.**

4. Upon a trial before a jury to assess benefits in a public drainage
proceeding, the landowner may show not only the lay of his land, its
condition and present means of outlet, but as well the cost of draining
his farm without the aid of the proposed system.

Catherine Owens, deeming herself aggrieved by the final order of the
district court for Blue Earth county, confirming and approving the re-
ports of the engineer and viewers which assessed the benefits to her land,
in proceedings to establish Judicial Ditch No. 7 in that county, de-
manded a jury trial. The matter was heard by Comstock, J., and a
jury which found the benefits accruing to the southwest quarter of the
southeast quarter of section 11, township 108, range 28 west, to be
$1,500, and to the east half of the southeast quarter of section 10, town-

[1]Reported in 171 N. W. 564.

ship 108, range 28 west, to be $2,100. From an order denying her motion for a new trial, Catherine Owens appealed. Reversed.

*Hughes & Ellsworth* and *H. L. & J. W. Schmitt*, for appellant.

*S. B. Wilson*, for respondent.

QUINN, J.

Judicial Ditch No. 7, of Blue Earth county, was established in March, 1916. It consists of about four miles of tile work and cost approximately $15,200. The demandant, Catherine Owens, is the owner of the southeast quarter of section 10 and the southwest quarter of the southwest quarter of section 11, township 108 north, range 28 west. In assessing benefits for the project the viewers assessed the quarter section as one tract, $2,100, and the forty in section 11, $1,500. The owner, feeling aggrieved, served a demand for a jury, and the issue thus raised was tried in June of that year, resulting in an assessment subtantially the same as that fixed by the viewers. At that trial it was contended on behalf of the demandant that she had a good and sufficient outlet through a deep ravine that started upon the west half of her quarter section for the drainage of her entire farm. Proofs to that effect were offered and excluded.

Thereafter, upon motion, a new trial was granted. On February 8, 1917, the court, upon motion of the petitioners, made and filed an order amending the viewers' report by eliminating therefrom the west half of the southeast quarter of section 10, to which the demandant objected and now insists was error. It is sufficient here to remark that if it was error to so amend the viewers' report it was error without prejudice to the rights of the demandant upon this trial, as it did not in any manner affect the rule of evidence applicable to the amount of benefits, which is the only issue involved. On February 12, 1917, the cause again came on for trial before a jury, and the assessment of benefits to demandant's land was fixed at the same amounts as were formerly fixed by the viewers. From an order denying her motion for a new trial, demandant brought this appeal.

The demandant's farm is located at the summit of a bluff immediately to the south of the Minnesota river. A few rods south of the north line of her west eighty is a ravine 15 to 20 feet in depth. It

deepens rapidly with a heavy fall toward the river to the north. There is a public highway on the line between the two eighties. A few rods south of the north line of the demandant's land is a culvert crossing the highway through which the water from the north forty of the east eighty flows west towards the ravine. It is contended on behalf of the demandant that the ravine furnishes an adequate and sufficient outlet for the complete tile drainage of her entire farm; that in so draining it the main line of tile would start at the same place and at the same depth on her south line as the main line of the proposed public system, and would extend thence north to the culvert in the highway, thence west to the ravine at a sufficient depth to afford an ample outlet for laterals to completely drain her entire farm, including the forty in section 11 and would cost less, including all laterals necessary to completely drain all her land, than her assessment in the public system for a mere outlet. Upon the trial demandant offered testimony and proof in support of such contention. The proofs were excluded and the offer rejected, upon the theory that the drainage basin having been fixed by the order establishing the drainage system, the demandant was precluded from showing the feasibility of draining her farm by any means other than through the proposed drainage system. This was error for which a new trial must be granted.

The order of a judge establishing a public drainage system and confirming the report of the viewers, is a final determination of the proceeding. In re Judicial Ditch No. 52, 131 Minn. 372, 155 N. W. 626. It in no way changes the rule of evidence bearing upon the issue raised by a demand for a jury to assess benefits. A demand for a jury to assess benefits or damages, as the case may be, is a demand for a review by a jury of the decision of the court. The demand gives the landowner a review upon the question of benefits or damages de novo, a second day in court upon that issue, under the same rule of evidence as upon the final hearing before the court.

In the present case the source or starting point of the main line is a few feet south of the south line of demandant's east eighty, in a slough on section 15, extending thence northeasterly to a point about 200 feet north of the northeast corner of the south forty of that eighty where it leaves the demandant's premises, extending thence east and thence

south to its outlet on section 33, a distance in all of about three miles. The main line gives to demandant's land 19 stations of 12 and 14 inch tile at a cost to the drainage project of less than $676. Branch 4 has its starting point a few feet south of the south line of demandant's forty in section 11, in a low spot on section 14, and extends thence due north across the westerly side of the forty to the main line, thereby giving to demandant's forty 1,320 feet of eight and ten inch tile at a cost to the project of less than $250. Against this cost of $926 for tile which demandant receives, her land is assessed benefits to the amount of $3,600.

If the above assessment stands the demandant will be required to pay thereon the sum of $3,132, which amount, less the cost of tile which she receives, leaves $2,206, the cost to her for an outlet. It would seem a harsh rule that would prevent her, under such circumstances, from showing, in an effort to arrive at the true amount of benefits which the proposed system would be to her land, not only the lay of the ground, its condition and the present means of an outlet, but as well the cost of draining her farm without the aid of the proposed system. This may or may not be a just assessment. We do not have to do with that question. We know of no rule that will or should preclude a landowner from showing the present condition of his farm, the present means thereon for drainage outlet and what it would cost to avail himself thereof as bearing upon the amount of benefits which his farm should be assessed in a proposed drainage project.

Reversed.